UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TOWN OF VERONA; TOWN OF VERNON;
ABRAHAM ACEE; and ARTHUR STRIFE,

                                        Plaintiffs,

        -against-                                      6:08-CV-647 (LEK/GJD)

KENNETH SALAZAR, in his Official Capacity
as United States Secretary of the Interior; UNITED
STATES DEPARTMENT OF THE INTERIOR;
and MARK FILIP, in his Official Capacity as
Attorney General of the United States,

                                        Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

        Plaintiffs filed this action on June 19, 2008, challenging a May 20, 2008 Record of Decision

("ROD") in which the United States Department of the Interior ("DOI") decided to accept over

13,000 acres of land in central New York into trust for the benefit of the Oneida Indian Nation of

New York ("OIN").  See Compl. (Dkt. No. 1).  Presently before the Court is Defendants' Motion

seeking partial dismissal of Plaintiffs' Complaint.  Motion to dismiss (Dkt. No. 10).  Also before the

Court is Plaintiffs' Motion seeking summary judgment on their second claim.  Motion for Sum.

Judg. (Dkt. No. 18).  For the reasons that follow, Defendants' Motion is granted and Plaintiffs'

Motion is denied.

**I.      BACKGROUND**[1]

_____

        [1] The above-captioned case is one of several filed in this Court by different plaintiffs raising
challenges to various aspects of the DOI's May 20, 2008 Record of Decision.  See 5:08-CV-633;
5:08-CV-648; 5:08-CV-649; 6:08-CV-644; 6:08-CV-660.  These cases represent only the latest
chapter in a long saga of litigation involving the OIN's land claims in New York.  For a more

On April 4, 2005, the OIN submitted a fee-to-trust request to the DOI's Bureau of Indian Affairs ("BIA") requesting that the Secretary of the Interior (the "Secretary") take approximately 17,370 acres into trust on behalf of the OIN.  ROD at 2, 6 (Dkt. No. 1, Ex. A); see Compl. ¶¶ 38-39. The request included land located in the Towns of Verona and Vernon, New York.  Compl. ¶ 1. Pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., the DOI issued a draft Environmental Impact Statement ("EIS") regarding the proposed fee-to-trust request on November 24, 2006.  ROD at 2, 6; Compl. ¶ 44.  Public comments were solicited until February 22, 2007, and public hearings were held on December 14, 2006 and February 6, 2007.  ROD at 2, 6; Compl. ¶ 45.  The DOI issued its final EIS on February 22, 2008.  ROD at 2, 7; Compl. ¶ 45.  On May 20, 2008, "based on the Department's review of the Draft EIS, the Final EIS, comments received from the public, Federal agencies, State agencies, local governmental entities, and potentially affected Indian tribes, and the applicable statutory and regulatory criteria for acquiring title to lands in trust status[,]" the DOI issued its Determination to acquire approximately 13,003.89 acres in trust for the OIN.  ROD at 2.

In their Complaint, Plaintiffs challenge the DOI's May 20, 2008 ROD, alleging violations of, inter alia, the Tenth Amendment; the land into trust provision of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465 ("Section 465"); and the Indian Gaming Regulatory Act ("IGRA").  See

---

detailed historical background of the OIN and this litigation, see, for example, the Supreme Court's opinion in City of Sherill, New York v. Oneida Indian Nation of New York ("Sherill"), 544 U.S. 197 (2005); the Second Circuit's opinion in Oneida Indian Nation of New York v. City of Sherill, New York ("Oneida Indian Nation"), 337 F.3d 139 (2d Cir. 2003) (reversed by the Supreme Court in Sherill); or this Court's opinions in Oneida Indian Nation of New York v. New York, 500 F. Supp. 2d 128 (N.D.N.Y. 2007) and Oneida Indian Nation of New York v. New York, 194 F. Supp. 2d 104 (N.D.N.Y. 2002).

generally Compl.  Plaintiffs invoke federal jurisdiction pursuant to, *inter alia*, the Administrative

Procedure Act ("APA"), 5 U.S.C. § 702.  Id. ¶ 11.  Plaintiffs seek a declaratory judgment that the

Defendants' actions were illegal, null and void, and a permanent injunction prohibiting

implementation of the May 20, 2008 ROD.  See id.

On September 22, 2008, Defendants filed the pending Motion of partial dismissal.  Dkt. No.

10.  On November 18, 2008, Plaintiffs filed the pending Motion seeking summary judgment with

respect to their Second Claim.  Dkt. No. 18.

## II.     DEFENDANTS' MOTION TO DISMISS

### A.     Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss

pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party

as true and "draw all inferences in the light most favorable" to the non-moving party.  In re NYSE

Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007).  "The movant's burden is very

substantial, as '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the

claimant is entitled to offer evidence to support the claims.'"  Log On America, Inc. v. Promethean

Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of

Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations omitted)).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack

of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power

to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)). In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court "'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001)). A defendant's challenge to a plaintiff's constitutional standing to sue is properly brought under Rule 12(b)(1). See Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1) . . . the proper procedural route is a motion under Rule 12(b)(1).") (internal citations omitted).

### B.    Tenth Amendment

In their First Claim, Plaintiffs allege that Section 465,[2] as applied, violates the Tenth

---

[2] Section 465 provides, in relevant part, that:

The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

\*\*\*

Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465.

Amendment.  See Compl. ¶¶ 62-71.  Plaintiffs contend that "[p]rinciples of state sovereignty, implicit throughout the Constitution and explicit in the Tenth Amendment," prohibit the federal government from "commandeer[ing] thousands of acres of settled land from the jurisdiction of the State without its consent for the purpose of creating a sovereign Indian enclave."  Pls.' Mem. in Opp'n at 14 (Dkt. No. 17).  Defendants contend that Plaintiffs lack standing to raise a Tenth Amendment claim, and that Plaintiffs' Tenth Amendment claim fails to state a claim upon which relief can be granted.  See Motion to dismiss.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."  New York v. United States, 505 U.S. 144, 156 (1992) (citations omitted).

Plaintiffs' Tenth Amendment claim must be dismissed, as Section 465 represents a valid exercise of congressional authority pursuant to the Indian Commerce Clause.[3]  Pursuant to the

---

[3] Plaintiffs' Tenth Amendment claim has been addressed only sparingly by other courts.  In Carcieri v. Kempthorne, 497 F.3d 15 (1st Cir. 2007) (en banc) (reversed on other grounds), the State of Rhode Island and associated plaintiffs challenged the DOI's decision to accept a 31-acre parcel of land into trust for an Indian Tribe.  The plaintiffs brought numerous statutory and constitutional claims, including a Tenth Amendment challenge.  The First Circuit affirmed the District Court's grant of summary judgment for the DOI on all claims.  As to the Tenth Amendment claim, the First Circuit held that "[b]ecause Congress has plenary authority to regulate Indian affairs, section 465 of the IRA does not offend the Tenth Amendment."  497 F.3d at 40 (citation omitted).  The plaintiffs petitioned for certiori on various grounds, but not on the Tenth Amendment claim.  In Carcieri v. Salazar, ___ U.S. ___, 129 S. Ct. 1058 (2009), the Supreme Court reversed the First Circuit on statutory grounds.

Indian Commerce Clause, Congress has the power "[t]o regulate commerce . . . with the Indian tribes[.]"  U.S. CONST. art. I, § 8, cl. 3.  As the Supreme Court has repeatedly noted, Congress possesses plenary authority to legislate in matters involving Indian affairs.  See, e.g., United States v. Lara, 541 U.S. 193, 200 (2004) (describing Congress' powers to legislate in respect to Indian matters as "plenary and exclusive"); South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989) ("[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs[.]") (citing Morton v. Mancari, 417 U.S. 535, 551-52 (1974)).  "With the adoption of the Constitution, Indian relations became the exclusive province of federal law."  County of Oneida v. Oneida Indian Nation of New York, 470 U.S. 226, 234 (1985).

Given the Supreme Court's broad interpretation of the Indian Commerce Clause, the Secretary's determination to take land into trust for the OIN pursuant to Section 465 must be read as a valid exercise of the power delegated to Congress by the Constitution.  As the Secretary's authority to take land into trust for Indians springs from powers delegated to Congress in Article I, Section 465, as applied herein, does not implicate the Tenth Amendment.  See New York, 505 U.S. at 156.

Plaintiffs also cite to the Enclave Clause in support of their Tenth Amendment claim.  See Pls.' Mem. in Opp'n at 14.  The Enclave Clause provides that Congress has the power "to exercise exclusive Legislation in all Cases . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts . . . and other needful Buildings[.]"  U.S. CONST. art. I, § 8, cl. 17.  However, the Enclave Clause is not implicated by the DOI's

accepting land into trust pursuant to Section 465.  Accepting land into trust does not amount to

exclusive federal jurisdiction over the subject land, as would be required for the Enclave Clause to

apply.  See, e.g., Nevada v. Hicks, 533 U.S. 353, 361 (2001) ("Our cases make clear that the

Indians' right to make their own laws and be governed by them does not exclude all state regulatory

authority on the reservation.  State sovereignty does not end at a reservation's border.").

Plaintiffs also argue that "New York, as one of the original 13 colonies, stands in a

somewhat different position from most other States with respect to this issue of state sovereignty."

Pls.' Mem. in Opp'n at 15.  However, this argument is without merit, as pursuant to the "'equal

footing doctrine,' all States are admitted to the Union with the same attributes of sovereignty . . . as

the original 13 States."  Minnesota v. Mille Lacs Bank of Chippewa Indians, 526 U.S. 172, 203

(1999) (citing Coyle v. Smith, 221 U.S. 559 (1911)).  The authorities cited by Plaintiffs do not

support the proposition that the ROD – because it concerns land in one of the original thirteen

colonies – runs counter to the Tenth Amendment.

Accordingly, Plaintiffs' Tenth Amendment claim is dismissed.[4]

## C.      Indian Gaming Regulatory Act and the Legality of Gaming at Turning Stone Casino

In their Third Claim, Plaintiffs allege that the Defendants' decision to take the subject land

into trust for the OIN was arbitrary, capricious and an abuse of discretion because, *inter alia*, the

---

[4]  As the Court is granting Defendants' Motion to dismiss Plaintiff's Tenth Amendment claim pursuant to Rule 12(b)(6), the Court need not address Defendants' argument that Plaintiffs lack standing to pursue this claim.

operation of the Turning Stone Casino,[5] a Class III gaming[6] facility, is illegal, and the Indian

Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2719 (Section 2719) prohibits gambling on land

acquired in trust after IGRA's enactment, and the OIN does not qualify for any of the exceptions to

Section 2719.  Compl. ¶¶ 96-109.  Plaintiffs contend that they "neither assert a claim for relief under

IGRA nor request an order terminating the illegal gambling operation there."  Pls.' Mem. in Opp'n

at 17.  Instead, Plaintiffs contend that the alleged illegality of gambling at Turning Stone is an

element of Plaintiffs' APA claim seeking an order nullifying the Secretary's decision to take 13,000

acres into trust for the OIN.  Id.

Defendants argue that Plaintiffs lack standing to challenge the legality of gaming at Turning

Stone.  See Motion to dismiss.  Defendants also argue that because the Turning Stone Casino is

situated within the boundaries of the OIN reservation, the Secretary need not comply with 25 U.S.C.

§ 2719(b)(1)(A) before taking the subject land into trust.  See id.

The Court concludes as a matter of law that to the extent Plaintiffs invoke IGRA or

otherwise challenge the legality of gaming at Turning Stone Casino, Plaintiff's claims are without

merit and must be dismissed.  IGRA establishes the requirements for lawful Class III gaming on

Indian lands:

> 1) Class III gaming activities shall be lawful on Indian lands only if such activities
> are–

---

[5] It is undisputed that the ROD includes the land where the Turning Stone Casino is located and that the Turning Stone Casino is located in Verona, New York.  Compl. ¶ 13.

[6] Class III gaming is defined in IGRA as "all forms of gaming that are not class I gaming or class II gaming[,]" 25 U.S.C. § 2703(8), and "includes such things as slot machines, casino games, banking card games, dog racing, and lotteries."  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 48 (1996).

(A) authorized by an ordinance or resolution that--
    (I) is adopted by the governing body of the Indian tribe having jurisdiction over such lands,
    (ii) meets the requirements of subsection (b) of this section, and
    (iii) is approved by the Chairman,

(B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and

(C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

25 U.S.C. § 2710(d).  IGRA defines "Indian lands" as including, *inter alia*, "all lands within the limits of any Indian reservation[.]"  25 U.S.C. § 2703(4)(A).

Plaintiffs contend that the OIN is illegally operating a Class III gaming facility at Turning Stone Casino because the OIN lacks jurisdiction over the land where the casino is located, and there is no valid Tribal-State compact.  See 25 U.S.C. § 2710(d).  However, in the ROD, the DOI discussed the issue of the legality of gaming at the Turning Stone Casino:

The State of New York and others questioned whether further State approval of Class III gaming at the Turning Stone Resort & Casino is necessary before the Department may issue this ROD.  Since 1993, the Nation has been lawfully conducting Class III gaming at Turning Stone under IGRA.  The casino is situated within the Oneida reservation on Indian lands as required by IGRA.  See 25 U.S.C. § 2703(4).  The casino has been operating pursuant to a gaming compact between the State and the Nation that was approved by the Department in 1993 and that remains in effect.  See BIA, Notice of Approved Nation-State Compact, 58 Fed. Reg. 33160 (June 15, 1993). Under the terms of the compact, the Nation exercises "full jurisdiction over and . . . responsibility for Nation Class III gaming operations" at Turning Stone.  Nation-State Compact Between the Oneida Indian Nation of New York and the State of New York § 3 (1993); see also id. §§ 5 (law enforcement powers), 12 (protection of health and safety). Thus, no further approvals by the State or the Department are required. . . .

ROD at 8-9.  Plaintiffs have failed to show how the alleged illegality of gaming at the Turning Stone Casino pursuant to IGRA would impair the DOI's statutory authority to take

land into trust for the OIN pursuant to Section 465 of the IRA. Moreover, the National

Indian Gaming Commission, and not the DOI, is the federal agency tasked with ensuring

compliance with IGRA. See 25 U.S.C. §§ 2705, 2713.

Plaintiffs have also failed to show that the ROD failed to comply with Section 2719

of IGRA. Section 2719 provides, in relevant part, that:

(a) Prohibition on lands acquired in trust by Secretary

Except as provided in subsection (b) of this section, gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988, unless–

(1) such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988; or

* * *

(b) Exceptions

(1) Subsection (a) of this section will not apply when–

(A) the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination; or

* * *

(c) Authority of Secretary not affected

Nothing in this section shall affect or diminish the authority and responsibility of the Secretary to take land into trust.

25 U.S.C. § 2719.

Because the Turning Stone Casino is within the boundaries of the OIN reservation, the

10

procedures required by 25 U.S.C. § 2719(b)(1)(A) do not apply.  In <u>Oneida Indian Nation</u>, in a series of consolidated cases, the OIN brought suit against the City of Sherrill and Madison County, New York, alleging that properties once part of the OIN's ancestral land that OIN members had reacquired on the open market were within the OIN reservation and therefore not subject to taxation. The Second Circuit held, *inter alia*, that the OIN reservation, as recognized by the 1794 Treaty of Canandaigua, has never been disestablished, and that therefore the lands were not subject to taxation.  337 F.3d at 160-65, 167; <u>see</u> <u>id.</u> at 165 ("Construing the Buffalo Creek Treaty liberally and resolving, as we must, all ambiguities in the Oneidas' favor, we conclude that neither its text nor the circumstances surrounding its passage and implementation establish a clear congressional purpose to disestablish or diminish the OIN reservation.").

In <u>Sherrill</u>, the Supreme Court reversed and remanded, holding that "'standards of federal Indian Law and federal equity practice' preclude the Tribe from rekindling embers of sovereignty that long ago grew cold."  544 U.S. at 214.  The Supreme Court noted how the "long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court, and the attendant dramatic changes in the character of the properties, preclude OIN from gaining the disruptive remedy it now seeks."  <u>Sherrill</u>, 544 U.S. at 216-17.  However, the Supreme Court noted that it "need not decide today whether, contrary to the Second Circuit's determination, the 1838 Treaty of Buffalo Creek disestablished the Oneida's reservation, as Sherrill argues."  544 U.S. at 216 n.9.

Plaintiffs argue that sovereignty is a distinguishing characteristic of an Indian reservation, and that accordingly the OIN reservation must be considered disestablished because the Supreme Court's decision in <u>Sherrill</u> confirmed that the OIN cannot exercise sovereignty over lands

reacquired in fee after over a century of non-tribal ownership.  However, the Second Circuit's holding in Oneida Indian Nation that the OIN reservation has not been disestablished remains binding precedent on this Court.  In Oneida Indian Nation of New York v. Madison County, 401 F. Supp. 2d 219 (N.D.N.Y. 2005) (Hurd, J.), Madison County unsuccessfully argued that relying upon the Second Circuit's holding that the Oneida reservation was not disestablished is contrary to the Supreme Court's decision in Sherrill.  Judge Hurd concluded that, because the Supreme Court "explicitly declined to decide whether the Second Circuit erred in determining that the reservation was disestablished . . . the Second Circuit holding that the reservation was not disestablished remains undisturbed."  Oneida, 401 F. Supp. 2d at 231.

This Court agrees that the Second Circuit's holding remains good law.  In Sherrill, the Supreme Court not only expressly declined to address the Second Circuit's determination that the OIN reservation had not been disestablished, but also noted that "'only Congress can divest a reservation of its land and diminish its boundaries.'"  544 U.S. at 216 n.9 (quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984) (other citations omitted)); see Solem, 465 U.S. at 470 ("Once a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise.").  Congress has not divested the OIN of its reservation.  Therefore, the Turning Stone Casino is "located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988."  25 U.S.C. § 2719(a).  Accordingly, the provisions of 25 U.S.C. § 2719(b)(1)(A) do not apply, and Defendants' Motion to dismiss this claim is granted.

**D.   Attorney General as Defendant**

Plaintiffs have named the Attorney General of the United States as a Defendant in this

action.  See generally Compl.  Defendants move to dismiss the Attorney General from the case, asserting that no claim has been raised against him and that Plaintiffs have shown no waiver of sovereign immunity that permits a suit against him.  See Motion to dismiss.

The Court agrees with Defendants that the Attorney General must be dismissed as a party to these proceedings.  The Complaint lists the Attorney General as the official who is responsible for "defending the constitutionality of all statutes enacted by Congress that are challenged in actions such as this[,]" Compl. ¶ 10, but includes no direct allegations regarding the Attorney General's conduct.  While Plaintiffs cite to 28 U.S.C. § 2403 in support of their inclusion of the Attorney General as a Defendant, that statutory provision does not provide a basis for the Attorney General to be a proper party to this litigation.  The provision provides, in relevant part, that:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is *not* a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(a) (emphasis added).  The provision is inapplicable here as a federal agency and federal officers are already parties to this action.  In any event, the provision would not mandate that the Attorney General be named as a party, but only that the court notify the Attorney General of the action, and permit, but not require, the United States to intervene.  See id.

As Plaintiffs have not otherwise demonstrated how the Attorney General was sufficiently involved in the challenged action, i.e. a determination by the DOI, to make the Attorney General a proper party to this action, he is dismissed as a Defendant.

## III.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A.      Standard of Review

13

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see also Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### B.   Discussion

Plaintiffs move for summary judgment on their Second Claim on the grounds that there is no statutory authority for the Secretary to take land into trust for the OIN. See generally Mem. in Supp.

14

(Dkt. No. 18, Attach. 1);  Reply (Dkt. No. 34).  Specifically, Plaintiffs contend that:

> the Indian Reorganization Act ("IRA"), and, in particular 25 U.S.C. § 465, which the Defendant U.S. Secretary of the Interior has invoked as the sole authority for taking land into trust on behalf of the of the Oneida Indian Nation ("Oneidas"), does not apply to the Oneidas because the IRA, by its very terms, applies only to tribes which affirmatively chose via a tribal election to be subject to its terms.  The Oneidas, by Defendants' own admission, specifically elected not to be covered by the IRA.  While the Defendants have indicated that the Indian Land Consolidation Act of 1983 ("ILCA") nevertheless extended the reach of the IRA to tribes regardless of any such election, Defendants overlook the limited application to the ILCA.  That law applies only to tribes for which the United States Holds land in trust, 25 U.S.C. § 2201(1),[7]  and the Oneidas are not such a tribe.

Mem. in Supp. at 4 (internal citations omitted).   Defendants dispute Plaintiffs' reading of 25 U.S.C. § 2201(1) ("Section 2201(1)") and contend that land can, in fact, be accepted into trust for the OIN pursuant to Section 465.  See generally Defs.' Opp'n to Mot. for Sum. Judg. (Dkt. No. 27).  For the following reasons, this Court finds that there are extant issues of fact which preclude the granting of summary judgment on this ground.

### i.      Voting to Opt-Out of the IRA

Plaintiffs contend that the United States lacks the authority to take land into trust for the OIN pursuant to Section 465 of the IRA because the OIN voted to reject the IRA.  Mem. in Supp. at 1. Plaintiffs rely on section 18 of the IRA, enacted as part of the original IRA in 1934 and codified at 25 U.S.C. § 478 ("Section 478").  Id.  It provides:

> This Act shall not apply to any reservation wherein a majority of the adult Indians, voting at a special election duly called by the Secretary of the Interior, shall vote against its application.  It shall be the duty of the Secretary of the Interior, within one year after June 18, 1934, to call such an election, which election shall be held by secret ballot upon thirty days' notice.

---

[7]  Under Section 2201(1), "Indian tribe" or "tribe" means "any Indian tribe, band, group, pueblo, or community for which, or for members of which, the United States holds lands in trust." 25 U.S.C. § 2201(1).

25 U.S.C. § 478.

In 1935, Congress extended the voting deadline and changed the majority vote requirement from a majority of eligible adults to a majority of those voting, assuming at least thirty percent (30%) of eligible adults voted.  See 25 U.S.C. § 478a.  A tribe that did not vote, or that did not meet the statutory requirements, did not, under Section 478, reject the IRA.  Id.  Defendants concede that the OIN opted out of the IRA by tribal vote.  See Defs.' Opp'n to Mot. for Sum. Judg. at 2-4.  It is, however, irrelevant whether the OIN rejected the IRA,[8] as Congress enacted the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. § 2202 ("Section 2202"),[9] to amend or repeal any possible Section 478 trust land disability.  See 25 U.S.C. § 2202.

### ii.    Defining "Tribe" Under 25 U.S.C. § 2201(1)

In the ROD, the DOI invoked Section 2202 as authority for accepting land into trust for the OIN pursuant to Section 465.  See ROD at 33-34 ("In the 1983 Indian Land Consolidation Act, 25 U.S.C. § 2202, Congress extended the provisions of Section 5 to all tribes except as otherwise provided under Federal law.  Therefore, no statutory limitation on acquiring land in trust is applicable to the Nation's request."); Defs.' Statement of Facts ¶¶ 13-14 (Dkt. No. 27, Attach. 2).  Plaintiffs, however, argue that pursuant to the definition section of ILCA, Section 2201, the OIN are not considered a "tribe."  Mem. in Supp. at 5-8.

---

[8]  "The Federal Defendants are aware that the Nation believes that the vote to opt out of the IRA may not have been valid, but for purposes of this motion it is assumed that the ROD is correct on this point.  Of course if the Nation is correct, resort to ILCA is not necessary in order to accept land into trust on behalf of the Nation pursuant to the IRA so, as a factual matter, it is immaterial to the ROD."  Id. at 2, n. 3.

[9]  Section 2202 states that "the provisions of section 465 of this title shall apply to all tribes notwithstanding the provisions of section 478 of this title . . ."  Id.

Under Section 2201(1),  "Indian tribe" or "tribe" is defined as "any Indian tribe, band, group, pueblo, or community for which, or for members of which, the United States holds lands in trust." 25 U.S.C. § 2201(1).  Plaintiffs contend that under Section 2201(1), the meaning of "tribe" is restricted to those tribes for which the United States holds land in trust and urge this Court to adopt this reading.  Mem. in Supp. at 7.  According to Plaintiffs' reasoning, the "all tribes" provision in Section 2202 would then be restricted to only those entities that already have trust land.  See id.  The Defendants contest Plaintiffs' reading of the statute.  See Defs.' Opp'n to Mot. for Sum. Judg. at 4-19.  Defendants argue that the statutory purpose, legislative history, and canons of construction refute Plaintiffs' interpretation.  See id.  This is an issue of first impression.

A principle purpose of both the IRA and ILCA was to restore Indian economic life through expanding tribal land bases.  The IRA was promulgated in 1934 as "[a]n Act to conserve and develop Indian lands and resources."  48 Stat. 984 (1934).  "The intent and purpose of the [IRA] was 'to rehabilitate the Indian's economic life and give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'"  Mescalero Apache Tribe v. Jones, 411 U.S. 145, 152-54 (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)); see also Morton v. Mancari, 417 U.S. 535, 542 (1974) ("The overriding purpose of the [IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically").  ILCA was subsequently enacted in 1983 to further effectuate this purpose by, inter alia, removing the Section 478 disability and expanding the reach of the IRA and Section 465, specifically.  See H.R. Rep. No. 97-908, 7 (1982) ("Section 203 [25 U.S.C. § 2202] extends the provisions of section 5 of the Act of June 18, 1834 [i.e., the IRA] to all tribes.").  Restricting the definition of "tribe" under Section 2201(1) to only include tribes for which the

United States already holds land in trust would vitiate the very purpose and intent of ILCA.[10]

Further, the canons of statutory construction support giving the word "tribe" a less restricted

meaning.

The Supreme Court has stated that according to the rule of the last antecedent, "a limiting

clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it

immediately follows. . . ." Barnhart v. Thomas, 540 U.S. 20, 26 (2003).  In Barnhart, the Court

construed a statute providing disability benefits to a claimant if "he is not only unable to do his

previous work but cannot . . . engage in another kind of substantial gainful work which exists in the

national economy."  Id. at 21-22.  The question was whether "which exists in the national economy"

modifies only the phrase it followed, "another kind of substantial gainful work," or whether it

modifies all previous phrases, specifically "his previous work."  Id.  The Court of Appeals had read

---

[10]  Even assuming *arguendo* that this Court was incorrect about Congress' intent and purpose of the IRA and ILCA, which it is not, the DOI's interpretation, which is consonant with that of the Defendants, would be entitled to deference.  In determining whether to accept an administrative agency's interpretation of a statute that it is tasked with administering, the Court should first inquire whether:

> Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter.  If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  As evidenced by the ROD, the DOI's interpretation of Section 2201(1) is consistent with Defendants.  See ROD at 33-34.  In order to uphold the DOI's interpretation, the court need only find that the DOI's interpretation "is a sufficiently rational one."  Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc., 470 U.S. 116, 125 (1985).  Here, Plaintiffs fail to proffer any argument that pushes the DOI's interpretation "over the edge of reasonable interpretation."  Whitman, 531 U.S. at 485.

the limiting language to modify all prior phrases.  The Supreme Court said that this was in

"disregard[]" of the rule of the last antecedent, under which the limitation at the end of the statute

applied only to the last antecedent, not to an earlier phrase in the statute.  Justice Scalia, writing for

a unanimous Court, explained "the error of the Third Circuit's perception" that the limitation at the

end of the statute applied to more than the last antecedent:

> Consider, for example, the case of parents who, before leaving their teenage son alone
> in the house for the weekend, warn him, "You will be punished if you throw a party or
> engage in any other activity that damages the house."  If the son nevertheless throws a
> party and is caught, he should hardly be able to avoid punishment by arguing that the
> house was not damaged.  The parents proscribed (1) a party, and (2) any other activity
> that damages the house.  As far as appears from what they said, their reasons for
> prohibiting the home-alone party may have had nothing to do with damage to the house-
> -for instance, the risk that underage drinking or sexual activity would occur.  And even
> if their only concern was to prevent damage, it does not follow from the fact that the
> same interest underlay both the specific and the general prohibition that proof of
> impairment of that interest is required for both.

Id. at 27-28.

In Barnhart, the Court relied on FTC v. Mandel Brothers, Inc., 359 U.S. 385 (1959), which

construed a statute defining "invoice" as "a written account, memorandum, list, or catalog . . .

transported or delivered to a purchaser, consignee, factor, bailee, correspondence, or agent, or any

other person who is engaged in dealing commercially in fur products or furs."  The Court of Appeals

had interpreted "who is engaged in dealing commercially in fur products or furs" as applying to all

prior phrases, such as "purchaser" and "consignee."  The Supreme Court reversed, holding that the

limitation applied only to the last antecedent, "any other person."  The "limiting clause is to be

applied only to the last antecedent."  359 U.S. at 389 & n.4; see also United States v. Kerley, 416

F.3d 176, 180 & n.2 (2d Cir. 2005) (in statute defining "support obligation" as "any amount

determined under a court order or an order of an administrative process pursuant to the law of a

State or of an Indian tribe," qualifying phrase "pursuant to, etc." applies to last antecedent, "order of an administrative process," and not to earlier antecedent, "court order").  The Court rejects Plaintiffs' position that the last antecedent rule is "ridiculous as applied . . . . [and] totally unavailing."[11]  Reply at 3.

Finally, the Supreme Court has also said that "[w]hen we are faced with . . . two possible constructions [of a statute], our choice between them must be dictated by a principle deeply rooted in th[e] Court's Indian jurisprudence: '[s]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'"  County of Yakima v. Confederated Tribes, 502 U.S. 251, 269 (1992) (quoting Montana v. Blackfeet Tribe, 471 U.S. 759, 766 (1985)); accord County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 247 (1985).  Based on the foregoing discussion, this Court finds that "for which, or for members of which, the United States holds lands in trust" only applies to the last antecedent, "community," and not to the entirety of Section

---

[11]  Further, a feature of, or corollary, to the rule of the last antecedent is the rule of punctuation.  It confirms the proper reading of the trust land qualification at the end of Section 2201(1) as applying only to the word "community."  "When a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents."  Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd, 186 F.3d 210, 215 (2d Cir. 1999) (abrogated on other grounds) (for term defined as "clause in a contract or an arbitration agreement, signed by the parties," modifier applied to all antecedents because it was set off by a comma).  Where the comma is not used to set off the modifier, then there is confirmation that the modifier applies only to the last antecedent.  See id. at 216 n.1.

Under this rule of punctuation, it would be necessary to insert a comma, as shown below, to read the trust land qualification at the definition's end as applying to "tribe" and the entire series that comes before, rather than as just applying to the last antecedent, "community," i.e., "Indian tribe" or "tribe" means "any Indian tribe, band, group, pueblo, or community *[,]* for which, or for the members of which, the United States holds land in trust."  Obviously, however, there is no such comma in Section 2201(1).  The absence confirms that the trust land qualification modifies only the antecedent to which it is connected, "community."

2201(1).[12]  Accordingly, this Court finds for Defendants and denies Plaintiffs' Motion for summary

judgment.

## IV.     CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motions seeking partial dismissal (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED,** that the Attorney General is **DISMISSED** as a defendant in the above-

captioned action; and it is further

**ORDERED**, that Plaintiffs' Motion for summary judgment on their Second Claim (Dkt. No.

18) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties.

**IT IS SO ORDERED**.

DATED:       September 29, 2009
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[12]  Plaintiffs also argue that Congress "clearly intended that a tribe is one for which the
United States holds land in 'trust,' not one with 'trust or restricted fee' land."  Reply at 13.  The land
in question is land that was accepted into trust by the United States on behalf of the OIN.  See
generally ROD.  Therefore it is irrelevant to the issue at bar whether there is any "basis to read
[Section 2201(1)] to include lands that tribe own [sic] subject to a restriction on alienation by
operation of law" and the Court will, therefore, reserve judgment.  Reply at 14.