UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TOWN OF VERONA; TOWN OF
VERNON; ABRAHAM ACEE; and
ARTHUR STRIFE,

                     Plaintiffs,

        -against-                                     6:08-cv-0647 (LEK/DEP)

SALLY M. R. JEWELL,[1] in her official
capacity as United States Secretary of
the Interior; UNITED STATES
DEPARTMENT OF THE INTERIOR,

                     Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiffs the Town of Verona, the Town of Vernon, Abraham Acee, and Arthur Strife (collectively, "Plaintiffs"), commenced this action to challenge a May 20, 2008, Record of Decision issued by the Department of the Interior ("DOI") acquiring over 13,000 acres of land in Central New York into trust for the benefit of the Oneida Indian Nation of New York ("OIN" or the "Nation"). Dkt. No. 1 ("Complaint") ¶ 1. Presently before the Court are Plaintiffs' Motion for summary judgment and Defendants' Cross-Motion for summary judgment. Dkt. Nos. 64 ("Motion"); 65 ("Cross-Motion"). For the following reasons, Defendants' Motion is granted and Plaintiffs' Motion is denied.

---

[1] Sally M. R. Jewel, as Secretary of the United States Department of the Interior, was substituted as a defendant for Kenneth L. Salazar on April 8, 2014, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

### A. Legal Framework

The Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C.§ 461 *et seq*., was the centerpiece of New Deal Indian policy, which sought to enable tribes "to interact with and adapt to modern society as a governmental unit," and repudiated an era in which federal Indian policy had encouraged cultural assimilation. F. Cohen, Handbook of Indian Law § 1.05, at 81 (Newton ed. 2012). The IRA ended allotment, see General Allotment Act of 1887 ("GAA"), 24 Stat. 388, where tribal lands had been broken up and distributed to individual Indians, and instead "facilitat[ed] tribes' acquisition of additional acreage and repurchase of former tribal domains," Handbook of Indian Law § 1.05, at 81.

To that end, § 5 of the IRA empowers the Secretary of the DOI (the "Secretary") to acquire land in trust for Indian tribes, such that the land is exempt from state and local taxation. 25 U.S.C. § 465. A tribe is qualified to have land taken into trust under § 5 if it meets the IRA's definition of "Indian," which includes, *inter alia*, "all persons of Indian descent who are members of any recognized tribe now under Federal jurisdiction." Id. § 479. DOI has promulgated regulations at 25 C.F.R. Part 151, which establish procedures for the acquisition of land in trust under § 5. These include criteria the Secretary must consider in making an acquisition, depending on whether the acquisition is on-reservation, 25 C.F.R. § 151.10, or off-reservation, id. § 151.11.

### B. Factual Background

"OIN is a federally recognized Indian Tribe and a direct descendant of the Oneida Indian Nation," which historically occupied what is now central New York, although the tribe's land holdings and population have fluctuated significantly over time. City of Sherrill, N.Y. v. Oneida

Indian Nation of N.Y., 544 U.S. 197, 203 (2005). On April 4, 2005, OIN submitted a request to DOI under § 5 of the IRA requesting that the Secretary acquire approximately 17,370 acres in Madison County and Oneida County, New York in trust status for OIN.[2] Dkt. No. 1-1 ("ROD") at 6. The request comprised properties that were reacquired by OIN in open-market transactions, two centuries after they had last been possessed by the Oneidas. Id. The land is the location of OIN's Turning Stone Resort & Casino ("Turning Stone"), a Class III casino under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.*; various other commercial enterprises, such as gas stations and golf courses; and OIN's government and cultural facilities. ROD at 6. OIN intends to continue existing uses of the land. See id. at 8, 31.

Pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, DOI issued a draft Environmental Impact Statement ("EIS") regarding the proposed fee-to-trust request on November 24, 2006. Id. at 6. The purpose of the proposed action was "to help address the Nation's need for cultural and social preservation and expression, political self-determination, self-sufficiency, and economic growth." Id. at 8. Public comments were solicited until February 22, 2007, and public hearings were held on December 14, 2006, and February 6, 2008. Id. at 6-7. DOI issued its final EIS on February 22, 2008. Id. at 7.

In the final EIS, DOI analyzed the environmental and socioeconomic impacts of the proposed action—acquiring the full 17,370 acres requested in trust—and eight reasonable alternatives. Id. at 6-7. On March 20, 2008, DOI issued its decision to accept approximately 13,003.89 acres in trust for the Nation. Id. at 7. The selected alternative "reflects the balance of the

---

[2] For further background on the history of OIN and the events leading to OIN's fee-to-trust request, see generally City of Sherrill, 544 U.S. 197.

current and short-term needs of the Nation to reestablish a sovereign homeland and the New York State and local government requests to establish a more contiguous and compact trust land grouping." Id. at 19. Under the selected alternative, 4,284 of the requested acres would not be placed into trust. Id. The selected lands are centered around Turning Stone in Oneida County and OIN's 32-acre territory in Madison County. Id. The decision included lands in the Towns of Verona and Vernon, both located in Oneida County. Compl. ¶¶ 1, 4, 5.

### C. Procedural Background

Plaintiffs commenced this action on June 19, 2008, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.[3] Compl. ¶ 1. The named Defendants are: Sally M. R. Jewel, United States Secretary of the Interior; DOI; and Mark Filip, in his official capacity as Acting Attorney General of the United States (collectively, "Defendants").

Plaintiffs' Complaint raises the following claims: (1) § 5 of the IRA, as applied to the State of New York, violates the Tenth Amendment; (2) the IRA does not apply to the lands for which OIN requests trust status because the lands were never the subject of allotment under the GAA, OIN was neither federally recognized nor under federal jurisdiction in 1934, and OIN voted not to have the IRA apply to it; and (3) DOI's determination was arbitrary, capricious, an abuse of discretion, and otherwise not accordance with the law because it was based on the erroneous assumption that Turning Stone is legally operated under the IGRA and failed to consider various factors under the

---

[3] Several other parties also filed suit challenging the ROD. State of New York, *et al.* v. Salazar, *et al.*, No. 6:08-cv-0644; City of Oneida v. Salazar, *et al.*, No. 5:08-cv-0648; Upstate Citizens for Equality, Inc., *et al.* v. United States, *et al.*, No. 5:08-cv-0633; Central New York Fair Business Association, *et al.* v. Salazar, *et al.*, No. 6:08-cv-0660; and Niagra Mohawk Power Corp. v. Kempthorne, *et al.*, No. 5:08-cv-0649.

4

applicable regulations.  See generally id.

On September 22, 2008, Defendants filed a Motion seeking partial dismissal of Plaintiffs' Complaint.  Dkt. No. 10.  On November 18, 2008, Plaintiffs filed a Motion seeking summary judgment with respect to their second claim.  Dkt. No. 18.  In a Memorandum-Decision and Order dated September 29, 2009, the Court granted Defendants' Motion—dismissing Plaintiffs' claim under the Tenth Amendment, Plaintiffs' claims related to the IGRA, and all claims against the Attorney General of the United States—and denied Plaintiffs' Motion.  Dkt. No. 38 ("2009 Memorandum-Decision and Order").

On November 15, 2011, the parties both moved for summary judgment on the remaining claims in Plaintiffs' Complaint.  Dkt. Nos. 46; 47.  A newly central issue raised in the case was whether OIN was eligible to have land taken into trust under the IRA in light of the Supreme Court's recent decision in Carcieri v. Salazar, 555 U.S. 379 (2009).  In Carcieri, the Supreme Court determined that the word "now" in the definition of "Indian" in the IRA—"all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction"—meant the date of the IRA's enactment in 1934.  Carcieri, 555 U.S. at 381.  Thus, to be eligible to have land taken into trust under the IRA, a tribe must have been under federal jurisdiction in 1934.  Since Carcieri had not been addressed in the ROD, the Court issued a Memorandum-Decision and Order dated September 24, 2012, denying all motions for summary judgment across the related cases, and remanding to DOI to establish a record and determine in the first instance whether OIN was under federal jurisdiction in 1934.  Dkt. No. 56.

On February 19, 2014, after the parties had an opportunity to submit evidence for DOI to consider, DOI filed an Amendment to the ROD applying Carcieri to OIN, consistent with the

5

Court's remand. Dkt. No. 61-1 ("Opinion"). The Opinion concluded that OIN "was under federal jurisdiction in 1934 because the Oneidas voted in an election called and conducted by the Secretary of the Department of the Interior pursuant to Section 18 of the IRA on June 18, 1936." Id. at 3. The Opinion determined that while the vote alone was sufficient, there were a number of other federal actions which, "either in themselves or taken together," establish that OIN was under federal jurisdiction in 1934. Id.

## III. STANDARD OF REVIEW

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the movant claims will demonstrate the absence of a genuine issue of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). If the movant has shown that there is no genuine dispute as to any material fact, the burden shifts to the non-moving party to establish a genuine issue of fact by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c). This requires the non-moving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

"The question whether an agency's decision is arbitrary and capricious . . . is a legal issue," and is thus, "amenable to summary disposition." Noroozi v. Napolitano, 905 F. Supp. 2d 535, 541

(S.D.N.Y. 2012) (quoting Citizens Against Casino Gambling in Erie Cnty. v. Stevens, 945 F. Supp. 2d 391, 399 (W.D.N.Y. 2013)). "When a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." State of Conn. v. U.S. Dep't. of Commerce, No. 04-cv-1271, 2007 WL 2349894, at *1 (D. Conn. Aug. 15, 2007) (citing Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001)); see also James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions.").

### B. Administrative Procedure Act

Under the APA, a district court may set aside an agency's findings, conclusions of law, or actions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "In reviewing agency action, [a][c]ourt may not 'substitute its judgment for that of the agency.'" Natural Res. Def. Council v. EPA, 658 F.3d 200, 215 (2d Cir. 2011) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). Rather, a reviewing court's task is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Overton Park, 401 U.S. at 416; see also Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989). Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Nat'l Ass'n of Homebuilders v. Defenders of Wildlife, 551 U.S. 664, 658 (2007) (internal quotations and citations omitted).

Nevertheless, a reviewing court's "inquiry must be searching and careful." Natural Res. Def. Council, Inc. v. FAA, 564 F.3d 549, 555 (2d Cir. 2009) (internal quotation marks and citations

7

omitted). An agency decision may be deemed arbitrary and capricious if the agency has relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Motor Vehicle Mfrs. Ass'n of U.S., Ind. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Yale New Haven Hosp. v. Leavitt, 470 F.3d 71, 79 (2d Cir. 2006).

Further, courts "do not hear cases merely to rubber stamp agency actions. To play that role would be 'tantamount to abdicating the judiciary's responsibility under the Administrative Procedure Act.'" Natural Res. Def. Council v. Daley, 209 F.3d 747, 755 (D.C. Cir. 2000) (quoting A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1491 (D.C. Cir. 1995)); see also Islander E. Pipeline Co., LLC v. McCarthy, 525 F.3d 141, 151 (2d Cir. 2008) ("This is not to suggest that judicial review of agency action is merely perfunctory. To the contrary, within the prescribed narrow sphere, judicial inquiry must be searching and careful.") (internal quotation marks and citations omitted). In order for an agency's decision to survive judicial review, the agency must have articulated "a rational connection between the facts found and the choice made." Henley v. FDA, 77 F.3d 616, 620 (2d Cir. 1996) (internal quotation marks omitted).

## IV. DISCUSSION

Defendants move for summary judgment on the following claims remaining in Plaintiffs' Complaint: (1) OIN is not eligible to have lands taken into trust under the IRA because it was neither federally recognized nor under federal jurisdiction in 1934; (2) the IRA does not apply to the lands OIN has requested be taken into trust because those lands were never subject to allotment; and (3) DOI's determination was arbitrary, capricious, and an abuse of discretion because it failed to

8

properly consider the requisite criteria. The parties have both moved for summary judgment on Plaintiffs' arbitrary and capricious claim. Dkt. Nos. 64-9 ("Plaintiffs Memorandum") at 3; 65-1 ("Defendants Memorandum") at 12. Defendants have also moved for summary judgment on Plaintiffs' Carcieri and allotment claims. Defs. Mem. at 11-12.

### A. Carcieri Claim

Defendants argue that to the extent Plaintiffs make a claim premised on Carcieri, summary judgment is appropriate in light of the Opinion adopted by DOI. Defs. Mem. at 13. Defendants argue that DOI's interpretation of "under federal jurisdiction" and "recognized" are entitled to Chevron deference. Id. Defendants further argue that DOI's determination that the Oneidas were under federal jurisdiction in 1934 is reasonable. Id. Plaintiffs have not briefed the Carcieri issue in either their Response to Defendants' Motion for summary judgment, nor in their own Motion for summary judgment. See generally Dkt. No. 67 ("Plaintiffs Response"); Pls. Mem. Plaintiffs state, however, that they have "preserved" the issue in the Complaint. Pls. Mem. at 2. As stated in the Complaint, the entirety of the claim is that "[u]pon information and belief, OIN was neither Federally recognized nor under Federal jurisdiction in 1934 at the time of the enactment of the IRA." Compl. ¶ 85.

An agency's decision is accorded a "presumption of regularity," Overton Park, 401 U.S. at 416, and the party challenging the decision has the burden of proof, Coal. on W. Valley Nuclear Wastes v. Bodman, 625 F. Supp. 2d 109, 116 (W.D.N.Y. 2007) (quoting Cnty. of Seneca v. Cheney, 12 F.3d 8, 12 (2d Cir. 1994)). Defendants, on remand, determined that the Secretary was authorized to acquire land in trust for the OIN under the IRA because the Oneidas were under federal jurisdiction in 1934. See Op. This determination is presumed to be reasonable absent a showing by

9

Plaintiffs to the contrary. Plaintiffs have not made any arguments as to why this determination was arbitrary, capricious, or otherwise not in accordance with law, aside from a bald assertion that the Oneidas were not under Federal jurisdiction in 1934. However, a party "must present evidence that the agency did not consider a particular factor; [they] may not simply point to the end result and argue generally that it is incorrect." South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 800 (8th Cir. 2005). In the absence of any argument by Plaintiffs, the Court finds that Plaintiffs have failed to meet their burden of proof, and that to the extent they make a claim premised on Carcieri, summary judgment in favor of Defendants is therefore appropriate.

### B. Allotment Claim

Defendants also move for summary judgment on Plaintiffs' claim that the IRA does not apply to the lands which are the subject of the trust application because those lands were never subject to allotment. Defs. Mem. at 23. This argument has already been rejected by the Court in a related case and is rejected here for the same reasons. See City of Oneida v. Salazar, No. 08-cv-0648, 2009 WL 3055274, at *5 (N.D.N.Y. Sept. 21, 2009) (Kahn, J.). First, the IRA is explicit that its application is general. See 25 U.S.C. § 473. Second, the legislative history makes clear that the IRA was intended to apply to New York State. See, e.g., 78 Cong. Rec. S11124, S11125. Accordingly, summary judgment is granted in favor of Defendants on Plaintiffs' claim that the IRA only applies to lands that were subject to allotment.

### C. Arbitrary and Capricious Claim

Plaintiffs claim that DOI's determination was arbitrary and capricious because it failed to properly consider the requisite criteria under the applicable regulations. Compl. ¶¶ 101, 103, 107. Specifically, Plaintiffs claim that DOI has not: (1) considered the purposes for which the land will

10

be used and have rewarded unlawful behavior; (2) taken account of the jurisdictional problems that acquiring the land will create; and (3) considered the impacts of the decision on small business.

*1. On-Reservation and Off-Reservation Regulations*

As a threshold issue, the parties dispute whether Defendants appropriately applied the on-reservation regulations. Pls. Mem. at 17-19; Dkt. No. 68 ("Defendants Response") at 20-21. Plaintiffs argue that Defendants were required to apply the off-reservation regulations, Pls. Mem. at 18-19, which require the Secretary to give "greater scrutiny to the tribe's justification of anticipated benefits," and "greater weight" to the jurisdictional concerns of local governments, 25 C.F.R. § 151.11(b).

An acquisition is considered "on-reservation," when "the tribe is recognized by the United States as having governmental jurisdiction" over the area of land acquired. 25 C.F.R. § 151.2(f). Plaintiffs argue that the Supreme Court's holding in City of Sherrill that OIN "cannot unilaterally reassert sovereign control" over the lands in question means that OIN does not have governmental jurisdiction over those lands. Pls. Mem. at 18. The City of Sherrill Court, however, clearly distinguished between questions of right and questions of remedy; its holding was that equitable considerations bar OIN from reasserting sovereign control. See City of Sherrill, 544 U.S. at 213-14. The City of Sherrill Court reserved judgment on whether the Oneidas' reservation still exists, 544 U.S. at 215 n.9, and as the Court has acknowledged, it remains the law in the Second Circuit that the OIN reservation has not been disestablished, see Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 337 F.3d 139, 165 (2d Cir. 2003); see also 2009 MDO at 11-12 ("[T]he Second Circuit's holding in Oneida Indian Nation that the OIN reservation has not been disestablished remains binding precedent on this Court."). Therefore, the United States does recognize OIN as having

11

governmental jurisdiction over the land in question, and, accordingly, Defendants correctly applied the on-reservation regulations.

### 2. Purposes for which the Land will be Used

25 C.F.R. § 151.10(c) requires the Secretary to consider "[t]he purposes for which the land will be used" in making a fee-to-trust decision. Plaintiffs claim that Defendants' decision to acquire the land in trust "inappropriately rewards unlawful behavior" because OIN's operation of Turning Stone is illegal. Compl. ¶ 98. The Court has already concluded that to the extent Plaintiffs make claims premised on the legality of gaming at Turning Stone, those claims are without merit and must be dismissed. See 2009 MDO. Thus, since Plaintiffs' claim that Defendants did not consider "the purposes for which the land will be used" is premised on the legality of Turning Stone, that claim is dismissed.

### 3. Jurisdictional Impacts of Acquiring the Land

25 C.F.R. § 151.10(f) requires the Secretary to consider the "[j]urisdictional problems and potential conflicts of land use which may arise" from a trust acquisition. Plaintiffs generally assert that Defendants' determination was arbitrary and capricious because the ROD inadequately considered the negative jurisdictional impacts of the acquisition and ignored alternatives that would have reduced jurisdictional conflicts. Pls. Mem. at 14.

Plaintiffs argue that the acquisition will cause lost tax revenue and complicate Plaintiffs' provision of services. Id. at 10-13. The lost tax revenue, Plaintiffs argue, will strain the ability of local governments to provide services, and will increase the burden on taxpaying landowners. Id. at 11. For example, the Vernon-Verona-Sherrill school district, which educates OIN and non-Indian children alike, will lose an important source of revenue. Id. Plaintiffs assert that the acquisition

12

will complicate Plaintiffs' provision of services insofar as OIN refuses to participate in local planning processes. Id. at 11-12. For example, in order to provide fire protection services at Turning Stone, the towns have incurred additional expenses through special training and increased insurance costs. Id. at 12. Similarly, the consumption of water at Turning Stone has exceeded permitted levels, which has created difficulties in distributing the cost of system upgrades. Id. at 11-12. Finally, OIN has undertaken numerous projects without participating in the towns' planning, permitting, zoning processes, or complying with local environmental regulations. Id. at 13, 17.

Section 151.10(f) only requires the Secretary to consider potential jurisdictional and land use conflicts; it does not mandate an outcome minimizing jurisdictional problems. South Dakota v. U.S. Dep't of Interior, 401 F. Supp. 2d 1000, 1009 (D.S.D. 2005) (citing South Dakota v. U.S. Dep't of Interior, 314 F. Supp. 2d 935, 945 (D.S.D. 2004)). The Court finds that Defendants properly considered the jurisdictional concerns raised by Plaintiffs and rationally evaluated such concerns in light of the facts found.

Defendants thoroughly analyzed the impacts of removing the land from State and local tax rolls in the ROD and final EIS.[4] Plaintiffs do not point to specific flaws in Defendants' analysis, but simply refer to the revenue losses Plaintiffs argue they will suffer. Pls. Mem. at 10, 20. Plaintiffs' argument appears to be that Defendants have not properly weighed these losses. The Court finds that Defendants have reasonably considered the impacts of lost tax revenues on local government. Defendants' analysis estimated the tax revenues that would be lost by each affected jurisdiction under various scenarios, given uncertainty about the resolution of ongoing tax litigation. ROD at

---

[4] The Secretary is required to consider the impacts of removing land from local tax rolls under § 151.10(e), not § 151.10(f).

13

45-46. Defendants concluded that, "based on taxes actually assessed and paid," the benefits of the acquisition to OIN outweighed the tax impacts on local governments. Id. at 50. Defendants' analysis further balanced lost tax revenue against the economic and tax benefits produced by OIN's business activities, and found that the net economic impact on almost every jurisdiction was positive, even assuming, *arguendo*, that OIN does not prevail in the ongoing tax litigation. Id. at 49-50. Considering the foregoing, Defendants ultimately concluded that the impact of removing the land from the tax rolls was not significant when balanced with the benefits to OIN. Id. at 50.

Defendants similarly addressed Plaintiffs' concerns about the disruptive effects of the trust decision on Plaintiffs' provision of water and fire-protection services and implementation of land use and zoning controls. Plaintiffs again do not point to specific flaws in Defendants' reasoning, but generally allege that Defendants inadequately weighed these concerns. See Pls. Mem. at 11-13. The Court finds that Defendants' discussion of these impacts and the conclusions Defendants reach are reasonable. In response to Plaintiffs' concern about the provision of services, the ROD notes that OIN has entered into agreements with local governments to defray costs of municipal services. ROD at 57. Thus, OIN has provided funds to the Town of Verona Fire Department and participated in the creation of an emergency response plan in the event of a significant fire at Turning Stone. Id. at 58. Likewise, OIN has financed a multi-million dollar water and sewer line, which it conveyed to the Town of Verona, and offered to contribute $10 to $11 million for the development of a new water system in Oneida County. Id. Defendants concluded that these agreements demonstrated OIN's "willingness and ability to cooperate," id. at 57, and Plaintiffs have not presented any evidence that contradicts that conclusion.

Defendants also responded to Plaintiffs' contention that the trust acquisition would disrupt

14

Plaintiffs' planning and zoning processes. Defendants found that although OIN has not submitted to local zoning processes, OIN has developed its lands in a manner that is generally consistent with local zoning regulations. ROD at 59. Defendants specifically found that OIN's land use in the Town of Vernon and the Town of Verona was generally consistent with those towns' zoning regulations. See Final EIS at 3-542 to 3-544, AR020837-39;[5] Final EIS 3-552 to 3-554, AR020847-49. "In the municipalities where the Nation owns property, approximately 90% of the land usage is agricultural, residential, or vacant." ROD at 59. The most significant non-conforming use is Turning Stone, which Defendants acknowledged, but emphasized was essential to OIN's "self-sufficiency." Id. Defendants concluded that any effect on the ability of local governments to zone consistently would likely be minimal, "[i]n view of the Nation's past and current management and use of its lands." Id. at 21. Plaintiffs argue that Defendants' reliance on OIN's past management practices is a "non-sequitur," but do not elaborate on why it is unreasonable. Mot. at 15; Compl. ¶ 15. Defendants are not, as Plaintiffs suggest, required to speculate about future development that OIN might undertake. See City of Lincoln City v. U.S. Dep't of Interior, 229 F. Supp. 2d 1109, 1123-24 (D. Or. 2002) (denying claim that DOI should have considered possibility that tribe might "substitute some other use in the future").

Plaintiffs also claim that Defendants' conclusion that the trust acquisition will not have a "direct impact" on the natural environment is clearly erroneous because OIN has repeatedly undertaken projects without complying with local environmental regulations. Pls. Mem. at 17. However, the final EIS does not say that the acquisition will not cause environmental impacts, but rather that the change in jurisdiction will not in itself cause environmental impacts. Final EIS at 4-

---

[5] The administrative record was filed with the Court on disks. Dkt. No. 43.

362, AR021349. Defendants acknowledge that the trust acquisition will have indirect environmental impacts insofar as OIN would no longer be subject to local and State regulations. See ROD at 29. The land, however, would still be subject to Federal law and OIN law. Final EIS at ES-45, AR020195. Defendants again considered OIN's past management of the lands, and finding no significant adverse environmental impacts, concluded the environmental impacts would be insignificant. ROD at 29-30. Plaintiffs have not made any argument that would contradict that conclusion.

Finally, the Court rejects Plaintiffs' contention that Defendants' decision is arbitrary and capricious because the alternative selected will cause more jurisdictional conflicts than other alternatives considered. Pls. Mem. at 15. NEPA is "a procedural statute that mandates a process rather than a particular result." Brodsky v. U.S. Nuclear Regulatory Comm'n, 704 F.3d 113, 118 (2d Cir. 2013) (quoting Stewart Park & Reserve Coal., Inc. v. Slater, 352 F.3d 545, 557 (2d Cir. 2003)). The ROD shows that Defendants adequately considered the various alternatives, and balanced the purpose and need for action with the interests of the State and local governments. Thus, Defendants selected one of the alternatives where jurisdictional impacts would be least conspicuous, because the majority of the properties "form highly contiguous and compact groupings." ROD at 21. Moreover, Defendants determined that those alternatives with fewer jurisdictional impacts would not have met the purpose of providing a land base for OIN. See id. at 21, 30. The selected alternative "reflects the balance of the current and short-term needs of the Nation to reestablish a sovereign homeland and the New York State and local government requests to establish a more contiguous and compact trust land grouping than the Proposed Action." Id. at 19.

In view of the discussion *supra*, the Court finds that Defendants reached a rational decision regarding Plaintiffs' jurisdictional concerns.

### *4. Economic Impacts of the Trust Acquisition*

Plaintiffs claim that the trust acquisition will grant OIN an unfair advantage in allowing it to operate a business in direct competition with local small businesses, without being subject to State and local laws. Compl. ¶¶ 106-07. Plaintiffs fail to state a legally cognizable claim because they are essentially objecting to the fee-to-trust mechanism that Congress established in the IRA to promote tribal self-governance, and not to Defendants' decision in the ROD. Furthermore, Plaintiffs ignore Defendants' discussion of this concern, which notes that "[p]lacement of the lands into trust would not prevent the State from enforcing lawfully applicable sales and excise taxes if in the future it determines to do so." See ROD at 24-25. Thus, to the extent that tribal businesses do enjoy a competitive advantage, it is for the State to decide whether to apply sales and excise taxes to tribal businesses.

### *5. Summary*

Plaintiffs have failed to meet their burden under the APA. The Record demonstrates that Defendants reached a reasonable decision that took account of the applicable regulatory factors. Moreover, Defendants considered and responded to the objections raised by Plaintiffs. Accordingly, the Court finds Defendants' decision to acquire the land in trust was not arbitrary and capricious, and that summary judgment is warranted in favor of Defendants on Plaintiffs' arbitrary and capricious claims.

### **D. State and Counties Settlement**

Plaintiffs argue that the settlement between the State and Oneida and Madison counties on

the one hand, and OIN on the other, represents a changed circumstance that the Court should take into account. Pls. Mem. at 22-24; Pls. Resp. The settlement agreement was approved by the Court in New York v. Salazar, No. 08-cv-644, 2014 WL 841764 (N.D.N.Y. Mar. 4 2014) (Kahn, J.). Plaintiffs have challenged the settlement in New York Supreme Court, Albany County, and now have appealed to the Appellate Division, Third Department. Dkt. Nos. 73-3; 73-4. Plaintiffs specifically argue that the Court should defer ruling on the present summary judgment motions pending resolution of that litigation. Pls. Mem. at 22-24. Plaintiffs further argue that the settlement reveals OIN's intention to submit a new fee-to-trust application, which Defendants must consider in approving OIN's current fee-to-trust application. Pls. Resp.

With respect to Plaintiffs' first argument, the Court finds no reason to defer ruling on the present summary judgment motions on account of challenges to a settlement agreement in a separate proceeding. Plaintiffs do not draw any connection between the settlement agreement and this proceeding.

The Court also rejects Plaintiffs' argument that Defendants must assess the settlement agreement in approving OIN's fee-to-trust application. Under the APA, judicial review is generally subject to the "record rule"; "a court reviewing an agency decision is confined to the administrative record complied by that agency when it made the decision." Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)). The settlement agreement is not part of the administrative record— because it was entered five years after the ROD was issued—and therefore will not be considered by the Court.

V. **CONCLUSION**

Accordingly, it is hereby:

18

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 64) for summary judgment is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 65) for summary judgment on all remaining claims is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 26, 2015
Albany, NY

Lawrence E. Kahn
U.S. District Judge